# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **JOHN SNIDER,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | **Case No.:  1:08-CV-1009-VEH** |
| ] | |
| **TEXAMERICAN FOOD** ] | |
| **BLENDING, INC., et al.,** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff John Snider ("Snider") originally filed this personal injury/products liability case in the Circuit Court of Calhoun County, Alabama, on April 28, 2008. (Doc. #1 ¶ 1; *see also* Doc. #1 at Ex. 1 at Compl.).  The case stems from injuries and damages purportedly sustained by Snider as a result of his taking certain dietary supplements.  (Doc. #1 ¶ 11; Doc. #1 at Ex. 1 at Compl.  ¶¶ 2, 5).

Defendant Texamerican Food Blending, Inc. ("Texamerican")[1] removed this litigation to this court on June 6, 2008, asserting diversity under 28 U.S.C. § 1332 as

---

[1]Total Body Essential Nutrition, Inc. ("Total Body"), St. John's Nutrition ("St. John's"), and Wright Enrichment, Inc. ("Wright") are the other named defendants in the case.  Defendant Wright Pharma, Inc. ("Wright Pharma") was dismissed without prejudice on June 27, 2008.  (Doc. #16).  On that same date, Wright was added.  (*Id.*).

the basis for federal jurisdiction.  (Doc. #1 ¶ 2).[2]

The court has before it Snider's Motion to Remand (Doc. #24) filed on July 2, 2008.  Texamerican filed its opposition (Doc. #28) to Snider's Motion to Remand on July 18, 2008, and Snider filed his reply (Doc. #31) on July 24, 2008.  Because the court concludes that it lacks subject matter jurisdiction, Snider's Motion to Remand is due to be granted.

## II.   SUBJECT MATTER JURISDICTION

### A.    General Principles

"It is by now axiomatic that the inferior courts are courts of limited jurisdiction. They are empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (internal citations omitted). "Accordingly, when a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power." *Id.* (internal citations omitted). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.*

---

[2]Wright Pharma joined in Texamerican's removal petition on June 6, 2009, and Total Body on June 9, 2008.  (Docs. #3, #4).  St. John's did not join.

at 410 (citing *Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868)).

"A necessary corollary to the concept that a federal court is powerless to act without jurisdiction is the equally unremarkable principle that a court should inquire into whether it has subject matter jurisdiction at the earliest possible stage in the proceedings." *Univ. of S. Ala.*, 168 F.3d at 410. "Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Id.* (citing *Fitzgerald v. Seaboard Sys. R.R.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (per curiam)).

Moreover, "[t]he jurisdiction of a court over the subject matter of a claim involves the court's competency to consider a given type of case, and cannot be waived or otherwise conferred upon the court by the parties. Otherwise, a party could 'work a wrongful extension of federal jurisdiction and give district courts power the Congress denied them.'" *Jackson v. Seaboard Coast Line R.R.*, 678 F.2d 992, 1000-01 (11th Cir. 1982) (quoting *American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 (1951)) (internal footnotes and citations omitted). Furthermore, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly." *Univ. of S. Ala.*, 168 F.3d at 411 (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941)).

Lastly, Congress has decreed and the Supreme Court has confirmed that - with

the express exception of civil rights cases that have been removed - orders of remand by district courts based upon certain grounds, including in particular those premised upon lack of subject matter jurisdiction, are entirely insulated from review.  More specifically, § 1447(d) provides:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

28 U.S.C. § 1447(d) (emphasis added); *see also Kirchner v. Putnam Funds Trust*, 547 U.S. 633, 642 (2006) (recognizing that "'[w]here the [remand] order is based on one of the grounds enumerated in 28 U.S.C. § 1447(c), review is unavailable no matter how plain the legal error in ordering the remand'") (citing *Briscoe v. Bell*, 432 U.S. 404, 413 n.13 (1977)); Milton I. Shadur, *Traps for the Unwary in Removal and Remand*, 33 no. 3 Litigation 43 (2007); *Powerex Corp. v. Reliant Energy Servs., Inc.*, 127 S. Ct. 2411, 2418 (2007) (holding that when "the District Court relied upon a ground that is colorably characterized as subject-matter jurisdiction, appellate review is barred by § 1447(d)").

### B.    Diversity Jurisdiction

Texamerican premises its removal upon this court's diversity jurisdiction. "Diversity jurisdiction exists where the suit is between citizens of different states and

4

the amount in controversy exceeds the statutorily prescribed amount, in this case $75,000." *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (citing 28 U.S.C. § 1332(a)). Therefore, removal jurisdiction based upon diversity requires: (1) a complete diversity of citizenship between the plaintiff(s) and the defendant(s); and (2) satisfaction of the amount in controversy requirement.

### 1.      Citizenship Requirement

Diversity jurisdiction "requires complete diversity—every plaintiff must be diverse from every defendant." *Palmer v. Hosp. Auth.*, 22 F.3d 1559,1564 (11th Cir. 1994). "Citizenship, not residence, is the key fact that must be alleged in the complaint to establish diversity for a natural person." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994).

### a.      Fraudulent Joinder Principles

The dispute over satisfaction of the citizenship requirement in this case has to do with whether Snider has fraudulently joined the non-diverse defendant St. John's. "[W]hen there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant[,]" fraudulent joinder is established. *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Relatedly, if fraudulent joinder is established, then the resident defendant is subject to dismissal as a party and its citizenship is disregarded for diversity requirement purposes. *See*

5

*id.*

The Eleventh Circuit extensively addressed the issue of removal based on diversity jurisdiction when it is alleged that a non-diverse defendant has been fraudulently joined in *Crowe v. Coleman*, 113 F.3d 1536 (11th Cir. 1997). There the court stated:

> In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). The burden of the removing party is a 'heavy one.' *B. Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981).

*Crowe*, 113 F.3d at 1538.[3]

The standard is onerous because, absent fraudulent joinder, a plaintiff has the absolute right to choose his forum. That is, courts must keep in mind that the plaintiff is the master of his complaint and has the right to determine how and where he will fight his battle. As *Crowe* further recognized:

> This consequence makes sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.*, 308 F.2d 474, 478

---

[3]Under the second prong of the fraudulent joinder test, the court must determine whether Plaintiff has fraudulently pled facts relating to a party's citizenship in an effort to avoid diversity jurisdiction. No issue related to the second prong exists in this case. Accordingly, the court limits its analysis to the first inquiry.

(5th Cir. 1962).[4]  The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.*, 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures § 3721), a result that is costly not only for the plaintiff, but for all the parties and for society when the case must be re-litigated.

*Crowe*, 113 F.3d at 1538.

To establish fraudulent joinder of a resident defendant, the burden of proof on the removing party is a "heavy one," *see Crowe*, 113 F.3d at 1538 (citation omitted), requiring clear and convincing evidence and particularity in pleading.  *See Parks*, 308 F.2d at 478 (citations omitted).   Although affidavits and depositions may be considered, the court must not undertake to decide the merits of the claim but must look to whether there is a <u>possibility</u> that a claim exists.  More particularly, the *Crowe* court explained the framework for analyzing fraudulent joinder as:

> While 'the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b),' [*B. Inc., v. Miller Brewing Co.*, 663 F.2d 545, 549, n.9 (5th Cir., Unit A 1981)], the jurisdictional inquiry 'must not subsume substantive determination.' *Id.* at 550.  Over and over again, we stress that 'the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits.' *Id.* at 548-49.  When considering a motion for remand,

---

[4]In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. *See id.* '<u>If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court</u>.' *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993).

*Crowe*, 113 F.3d at 1538 (emphasis added).

In a later fraudulent joinder decision, the Eleventh Circuit elaborated:

The fact that the plaintiffs may not ultimately prevail against the individual defendants because of an insufficient causal link between the defendants' actions and the plaintiffs' injuries does not mean that the plaintiffs have not stated a cause of action for purposes of the fraudulent joinder analysis. In a fraudulent joinder inquiry, 'federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.' *Crowe*, 113 F.3d at 1538.

*Pacheco de Perez v. AT & T Co.*,139 F.3d 1368, 1380-81 (11th Cir. 1998); *see also Tillman v. R.J. Reynolds Tobacco*, 340 F.3d 1277, 1279 (11th Cir. 2003) ("[I]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court.").

### b.    Application of Fraudulent Joinder Standard

Against the foregoing backdrop, the court now turns to the application of the fraudulent joinder standard in this case. The parties are in agreement over St. John's

role as the alleged seller of the dietary supplements.  (Doc. #1 ¶¶ 12-13; Doc. #24 at 11).  However, as Texamerican contends, relying in part upon the sealed container doctrine,[5] "Plaintiff cannot possibly establish a cause of action against St. John's under Alabama law as there exists no causal relationship between the defendant's conduct and the allegedly defective product."  (Doc. #1 ¶ 13 at 6).  Snider responds to the contrary maintaining that "there exists a very strong possibility that the Plaintiff can establish causes of action against St. John's for breaching the implied Uniform Commercial Code warranties of merchantability and fitness for a particular purpose as well as a cause of action for fraudulent concealment."   (Doc. #24 at 6-7).

The cases relied upon by Snider include *Rose v. General Motors Corp.*, 323 F. Supp. 2d 1244 (N.D. Ala. 2004), in which Judge Guin determined, citing *Spain v. Brown & Williamson Tobacco Corp.*, 872 So. 2d 102 (Ala. 2003), that "implied warranty claims in cases of injury by an unreasonably dangerous product" may lie

_____

[5]The so-called sealed container doctrine applicable to retail grocers finds its origins in the case of *Kirkland v. Great Atlantic & Pacific Tea Co.*, 171 So. 735 (Ala. 1936).  *See Allen*, 624 So. 2d at 1067 (discussing *Kirkland*).  As *Kirkland* holds:

> In this day the grocer's stock consists in much of canned goods, goods in bottles, cartons, sacks, packages of great variety, put up under pure food regulations, and sold at retail in the unopened package.  In common reason the grocer could not inspect the contents of every sack of flour he handles.  No one expects him to do so. To impose a legal duty so to do is too exacting.  The legal responsibility should rest where it belongs, on him who made the package and inclosed poisonous substances therein.

171 So. at 737; *see also Kroger Co. v. Goodhew*, 206 So.2d 882, 885 (Ala. 1968) ("[T]he law of Alabama does not impose upon the retailer the duty to inspect the content of sealed packages purchased by him from a reputable wholesaler.").

under Alabama law against sellers of goods.  *Rose*, 323 F. Supp. 2d at 1246-47.

Snider also points to the Supreme Court of Alabama's response to certified questions in *Spain* as supportive of his claims, and in particular, the discussion of *Allen v. Delchamps, Inc.*, 624 So. 2d 1065 (Ala. 1993) therein.  *Spain*, 872 So. 2d at 108.  *Allen* involved a lawsuit over a plaintiff getting sick after eating raw celery purchased at Delchamps, "but prepackaged in cellophane wrapping by Delchamps' supplier."  624 So. 2d at 1066.

The claims in the case included one for breach of the implied warranty of merchantability under Ala. Code § 7-2-314.[6]  The trial court granted summary

---

[6]Section 7-2-314 provides:

(1) Unless excluded or modified (Section 7-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as:

        (a) Pass without objection in the trade under the contract description; and
        (b) In the case of fungible goods, are of fair average quality within the description; and
        (c) Are fit for the ordinary purposes for which such goods are used; and
        (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
        (e) Are adequately contained, packaged, and labeled as the agreement may require; and
        (f) Conform to the promises or affirmations of fact made on the container or label if any.

(3) Unless excluded or modified (Section 7-2-316) other implied warranties may arise from course of dealing or usage of trade.

judgment in Delchamps' favor on all claims.  In reversing, the Supreme Court of Alabama determined with respect to the implied warranty count (which it analyzed similarly to the one asserted under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD")) that "whether sulfite preservatives on fresh produce are within the reasonable expectations of a consumer is a question for a jury." *Allen*, 624 So. 2d at 1068.  Further, while the court analyzed the potential application of the sealed container doctrine in the context of asserting negligence and wantonness, *see id.* at 1067, it did not do so with respect to the implied merchantability count. *Id.* at 1068.

In opposition to Snider's Motion to Remand, Texamerican argues that *Allen* is factually distinguishable and further that a breach of implied warranty of merchantability cannot be maintained in this instance, citing to the cases of *Yarbrough v. Sears, Roebuck & Co.*, 628 So. 2d 478 (Ala. 1993) and *Shell v. Union Oil Co.*, 489 So. 2d 569 (Ala. 1986).  (Doc. #28 at 4-5).  However, neither *Yarbrough* (kerosene heater), 628 So. 2d at 483, nor *Shell* ("inherently dangerous chemical compound"), 489 So. 2d at 570, involves a claim of implied merchantability with

---

(4) Procuring, furnishing, donating, processing, distributing, or using human whole blood, plasma, blood products, blood derivatives, and other human tissues such as corneas, bones or organs for the purpose of injecting, transfusing, or transplanting any of them in the human body is declared for all purposes to be the rendition of a service by every person participating therein and whether any remuneration is paid therefor is declared not to be a sale of such whole blood, plasma, blood products, blood derivatives, or other human tissues.

Ala. Code § 7-2-314.

11

respect to a product intended for human ingestion and each authority is therefore equally, if not more, factually dissimilar than *Allen* is to the circumstances of this lawsuit.

Trying to further separate this case from *Allen* and others in which the Supreme Court of Alabama has stated that liability under an implied merchantability theory may exist for the sale of contaminated food, Texamerican also argues in its opposition that the dietary supplement at issue here is not a food product.  (Doc. #28 at 6). Snider counters that Texamerican expressly refers to "the Total Body Formula sold to Mr. Snider [a]s 'a dietary supplement[.]'" (Doc. #31 at 3; Doc. #1 ¶ 11 at 4). Moreover, Snider notes that "the last sentence of 21 U.S.C. § 321(ff), which is found in the Food, Drug and Cosmetic Act, s[tate]s that 'a dietary supplement shall be deemed to be a food with the meaning of this Act,' unless it is deemed to be a 'drug.'" (Doc. #31 at 3 (emphasis removed)).

Furthermore and regardless, merely pointing out potential holes in Snider's implied merchantability theory against St. John's is inadequate.  The test on fraudulent joinder is not whether Snider can ultimately survive summary judgment, but rather whether Texamerican has shown <u>by clear and convincing evidence</u>, that he has not adequately stated an arguable merchantability (or other) claim against the

non-diverse defendant.[7]

Therefore, at least with respect to his implied warranty of merchantability claim, Snider has shown its potential viability, and Texamerican has simply not met its heavy burden by demonstrating otherwise.  At a minimum, Snider has shown an "uncertain[y] about the applicable law" especially given the fact-intensive nature of the area,[8] such that this court's resolution of the fraudulent joinder issue must be in his favor.  *See Pacheco*, 139 F.3d at 1380 ("[T]he district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor.").   Accordingly, because Texamerican has not met its burden in establishing fraudulent joinder, the parties are not diverse, and this case is due to be remanded for lack of subject matter

---

[7]Texamerican's position that Snider's word choices of "defect" and/or "defective" in describing the dietary supplement somehow transform his merchantability claim into an inactionable one under the AEMLD (*see* Doc. #28 at 5) is similarly unavailing in its efforts to satisfy the exacting burden on fraudulent joinder, given the Alabama Supreme Court's own use of same or similar terminology in the food product context.  *See Allen*, 624 at 1068 ("This Court has adopted the 'reasonable expectations' test for determining if food is unmerchantable or unreasonably dangerous.") (citation omitted); *id.* ("Because the terms 'defect,' 'unreasonably dangerous,' and 'merchantable' all focus on the expectations of the consumer, this Court has found the reasonable expectations test to be compatible with both the AEMLD and the implied warranty of merchantability.") (citation omitted).

[8]*See Spain*, 872 So. 2d at 108 ("In each case alleging a breach of the implied warranty of merchantability, the determination whether there was a breach requires a fact-intensive analysis.") (emphasis added); *see also Allen*, 624 So. 2d at 1068 ("'Generally, the question of what a consumer is reasonably justified to expect to find in his food is a question for the jury, unless the court finds, as a matter of law, that the consumer would reasonably expect to find the item in his food.'") (emphasis added) (citation omitted).

jurisdiction.[9]

## 2.    Amount in Controversy Requirement

While Snider has not challenged satisfaction of the amount in controversy requirement in his Motion to Remand, it is beyond question that this court has an independent jurisdictional duty to evaluate its sufficiency.   Regarding amount in controversy, "when Congress created lower federal courts, it limited their diversity jurisdiction to cases in which there was a minimum monetary amount in controversy between the parties."   *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (citing *Snyder v. Harris*, 394 U.S. 332, 334 (1969)).   Today, the threshold amount in controversy for diversity jurisdiction, excluding interests and costs, is $75,000.   28 U.S.C. § 1332.

"[W]here a plaintiff has made an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement."   *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356-57 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (2000); *see also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178,

---

[9]Because the court finds that Snider did not fraudulently join St. John's at least with respect to his breach of implied warranty of merchantability claim, it does not reach an analysis of the other counts.

182-83 (1936); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1211 (11th Cir. 2007),

*cert. denied*, ___ U.S. ___, No. 07-1246, 2008 WL 872061 (June 2, 2008).

In assessing the propriety of removal, "the court considers the documents
<u>received by the defendant from the plaintiff</u> . . . and determines whether that
document and the notice of removal unambiguously establish federal jurisdiction."
*Lowery*, 483 F.3d at 1211 (emphasis added). In *Lowery*, the Eleventh Circuit was at
a loss to determine by what means it could make an informed assessment of the
amount in controversy because the damages were unspecified and only the bare
pleadings were available. *Id*. at 1210.

Similarly, in this case, the court finds that the allegations of the amount in
controversy made in the notice of removal coupled with the unspecified damages
contained in the complaint are insufficient to establish satisfaction of the amount in
controversy requirement.  In its notice of removal, Texamerican unpersuasively
maintains that even though Snider has failed to assert any specific monetary amounts,
his seeking compensatory and punitive damages and his description of "'severe
adverse reactions, [which continue,] including substantial hair loss, discoloration and
loss of fingernails, bowel problems, nausea, difficulty swallowing, abdominal pain,
joint pain, muscle pain and cramps, excessive thirst, fatigue, disfigurement, pain and
suffering, disability, mental anguish, loss of capacity for enjoyment of life, lost wages

and loss of earning capacity[,]' and medical expenses past and future" within his complaint, satisfy the amount in controversy burden. (Doc. #1 ¶ 35; *see also id.* at Ex. 1 at Compl. ¶ 8). Such an amount in controversy statement is insufficient under *Lowery*'s holding that a removing party show the existence of federal jurisdiction without any ambiguity. *Id.*, 483 F.3d at 1214.

Texamerican does not even acknowledge the existence of *Lowery* much less explain how the present removal satisfies its multi-faceted jurisdictional standard. Instead, as supportive case authority for its untenable position Texamerican cites only to pre-*Lowery* decisions. (*See* Doc. #1 ¶ 35-37, 39 (citing *e.g., Lindsay v. American General Life & Accident Ins. Co.*, 133 F. Supp. 2d 1271 (N.D. Ala. 2001); *Steele v. Underwriter's Adjusting Co., Inc.*, 649 F. Supp. 1414 (M.D. Ala. 1986); *Paxton v. Weaver*, 553 F.2d 936 (5th Cir. 1997) (as parenthetically cited in *Steele*); *Bell v. Preferred Life Assurance Society*, 320 U.S. 238 (1943); *St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283 (1938))).[10]

Moreover, several persuasive post-*Lowery* opinions exist that support

---

[10]The court is puzzled by Texamerican's reference to the *Bell* opinion given that it involves the application of the legal certainty test to a case that was first filed in federal court (and subsequently dismissed) as opposed to the preponderance of evidence one to a lawsuit that was removed from state court to federal with unspecified damages, which is the relevant inquiry here. *See id.*, 320 U.S. at 239 ("The question here is whether petitioner's complaint was properly dismissed on the ground that the matter in controversy did not really and substantially exceed $3,000 as required by §§ 24 and 37 of the Judicial Code.") (emphasis added).

remanding this case for the failure to satisfy the amount in controversy requirement. *See, e.g., Beasley v. Fred's Inc.*, No. 08-0120-WS-C, 2008 WL 899249, at *1 (S.D. Ala. Mar. 31, 2008) (remanding *sua sponte* because "[t]he amount in controversy [was] not apparent from the face of the complaint, because there [was] no way to determine from the complaint whether the plaintiff has been injured so badly as to make an award of over $75,000 more likely than not"); *Spivey v. Fred's Inc.*, ___ F. Supp. 2d ___, No. 2:07CV594-WHA, 2008 WL 2120169, at *3 (M.D. Ala. May 20, 2008) (remanding *sua sponte* on the basis that the "court is not permitted to speculate as to the amount of damages in evaluating whether the jurisdictional amount has been met"); *Siniard v. Ford Motor Co.*, ___ F. Supp. 2d ___, No. 2:08CV14-MEF, 2008 WL 2132078, at *2 (M.D. Ala. May 22, 2008) (granting motion to remand in removed <u>wrongful death action</u> on grounds that "defendant and the court may not speculate about the amount in controversy, nor should 'the existence of jurisdiction' be 'divined by looking to the stars'") (citing *Lowery*, 483 F.3d at 1215).[11]

While this court recognizes that the requisite amount in controversy might exist, "[i]f the court asserts jurisdiction on the basis of the defendant's speculative

---

[11]The undersigned has also rendered several *Lowery*-based remand decisions from which the analysis and disposition of this case persuasively flow. *See, e.g., Smith v. Parker*, No.4:08-CV-901-VEH, (Docs. #10, #11) (N.D. Ala. July 11, 2008); *Wright v. Allstate Ins. Co.*, No. 1:08-CV-449-VEH, (Docs. #6, #7) (N.D. Ala. Apr. 23, 2008); *Standfield v. Fleet Global Services*, No. 2:07-CV-2307-VEH, (Docs. #10, #11) (N.D. Ala. Mar. 11, 2008).

assertions, it implicitly accepts rank speculation as reasonable inquiry [per Rule 11]. This could undermine the requirement of reasonable inquiry not only in removal situations, but also in other contexts." *Lowery*, 483 F.3d at 1215 n.67.

As *Lowery* explains, "the district court has before it only the limited universe of evidence available . . . [and] if that evidence is insufficient to establish that removal was proper or that jurisdiction is present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings." *Id*. at 1214-15; *see also Lindsey v. Ala. Tel. Co.*, 576 F.2d 593, 595 (5th Cir. 1978) (holding that "it was not open for defendants to attempt to show" the requisite amount in controversy per capita where the complaint made insufficient allegations, "[n]or was it open to the district court to speculate that such was in fact the case"). "Under § 1446(b), the operative document must unambiguously establish federal jurisdiction." *Belkin v. Home Depot U.S.A., Inc.*, No. 07-61368-CIV, 2007 WL 4247685, at *1 (S.D. Fla. Dec. 3, 2007) (citing *Lowery*, 483 F.3d at 1214 (citing *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002) ("holding that the document must be 'unequivocally clear and certain'")).

Therefore, "jurisdiction is either evident from the removing documents or remand is appropriate." *Lowery*, 483 F.3d at 1211. "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such

absence, the existence of jurisdiction should not be divined by looking to the stars." *Id*. at 1215.   Accordingly, Texamerican has not satisfied its preponderance of evidence standard by unambiguously establishing the amount in controversy as mandated under *Lowery*, and the case is due to be remanded for lack of subject matter jurisdiction for this additional reason.

The court recognizes that Texamerican does further state in its petition that "[i]n the event the Plaintiff disputes that the amount in controversy exceeds the jurisdictional prerequisite, Texamerican requests leave to conduct discovery (*i.e.*, the issuance to Plaintiff of five (5) Requests for Admission of Facts) to determine the extent of the Plaintiff's claims of damages."  (Doc. #1  ¶ 41).  Texamerican cites to no authority when making this request.

The extent to which any post-removal discovery is permissible in a post-*Lowery* world is open to debate because *Lowery* instructs the district court to focus only upon the <u>removing documents</u> when evaluating the sufficiency of a removal.  *Id*. at 1211.  Under such a standard, any post-removal responses to requests for admission would apparently be prohibited from serving as a basis in support of removal because they would fall outside the universe of acceptable documents for the court to appropriately consider.  *Id*. at 1214-15.

As the *Lowery* court more specifically directs district courts:

> Post-removal discovery disrupts the careful assignment of burdens and the delicate balance struck by the underlying rules. A district court should not insert itself into the fray by granting leave for the defendant to conduct discovery or by engaging in its own discovery. Doing so impermissibly lightens the defendant's burden of establishing jurisdiction. A court should not participate in a one-sided subversion of the rules. <u>The proper course is remand</u>.

*Id.*, 483 F.3d at 1218 (emphasis added) (footnotes omitted). However, at the same time, prior Eleventh Circuit case law does contemplate at least some allowable range of discovery while the case is still pending in federal court. *See Sierminski v. Transouth Financial Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) ("We align ourselves with our sister circuits in adopting a more flexible approach, allowing the district court when necessary to consider post-removal evidence in assessing removal jurisdiction.").

Of course, even if (and to what extent) post-removal discovery is still appropriate in light of *Lowery* and *Sierminski*,[12] this does not necessarily mean that a district court is obligated to permit it. Regardless, the court does not need to reach

---

[12]In its treatment of post-removal discovery, *Lowery* does not acknowledge the existence of *Sierminski*. To the extent a conflict exists between the two decisions, *Sierminski* controls by virtue of the first panel rule. *See United States v. Steele*, 147 F.3d 1316, 1317-18 (11th Cir. 1998) (en banc) ("Under our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong.") (citation omitted); *id.* at 1318 ("It is the firmly established rule of this circuit that each succeeding panel is bound by the holding of the first panel to address an issue of law, unless and until that holding is overruled en banc, or by the Supreme Court.") (internal quotation marks and citation omitted).

20

a resolution of the post-removal discovery issue because its decision to remand is not based exclusively upon Texamerican's failure to meet the amount in controversy threshold, but also upon its inability to satisfy the diversity of citizenship requirement. *See* discussion §§ II.B.1.a.-b., *supra*.

## III.   CONCLUSION

Therefore, as explained above, the court lacks subject matter jurisdiction, and Snider's Motion to Remand is due to be granted. More specifically, neither the diversity nor the amount in controversy requirement has been satisfied. Accordingly, an order will be entered remanding the case to the Circuit Court of Calhoun County.

**DONE** and **ORDERED** this the 29th day of July, 2008.

**VIRGINIA EMERSON HOPKINS**
United States District Judge